UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Margaret I. Tildon, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 1:08-cv-00346 (RMC) |
| | ) |
| Lt. Gen. Keith B. Alexander, Director | ) |
| Department of Defense, | ) |
| National Security Agency | ) |
| | ) |
| Defendant | ) |
| | ) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
CASE AND TO INCLUDE VIOLATIONS OF PRIVACY ACT

I.      JURISDICTION AND VENUE

1.      The District Court for the District of Columbia has jurisdiction over the case under the Privacy Act, 5 U.S.C. §552a (g) (1), (5).

2.      Venue properly lies in this District under the Privacy Act, 5 U.S.C. §552a (g) (5).

II.     THE PARTIES

3.      Plaintiff Margaret I. Tildon was an employee of the National Security Agency (NSA, or the agency) from 1982 to 1994. Prior to going to work for the agency, plaintiff resided in Washington, D.C.

4.      Defendant National Security Agency (NSA) is an agency of the federal government within the meaning of 5 U.S.C. §552 (a) (1) and §552 (e).

RECEIVED
JUN 1 3 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

### III. THE RELEVANT FACTS

5.  Plaintiff was employed by NSA from 1982 to 1994. While there, plaintiff was harassed, in 1985, by a co-worker, Kenneth Ramp, who was reported to NSA authorities. Retaliation then followed the reporting of this incident through different documents, which have previously been submitted to the defendant and the court.

6.  NSA continues to maintain personnel files on NSA employees including the plaintiff.

7.  One of the plaintiff's former attorneys, Alan Banov, continuously requested, on plaintiff's behalf, why documents were being withheld which could affect the plaintiff's future employment goals (see civil action no. 92-0912, dated April 11, 1992, Greene, J., HR titled "Verified Complaint: Violations of Privacy Act").

8.  Throughout the "Verified Complaint" are reported instances of violations against the plaintiff (see number 17, page 3).

9.  The "Verified Complaint" also notes when the agency never responded to reconsideration of a negative grievance decision (see numbers 26 and 27, page 5).

10.  NSA also did not respond within 30 working days to expunge four documents the plaintiff had requested removed after receipt of an appeal (see numbers 32 – 38 of "Verified Complaint").

11. NSA also has not identified the documents it has withheld or reasons for withholding them (see numbers 40 – 45 of "Verified Complaint").

12. As a result of continued violations of the Privacy Act (some additional papers that were located and have been sent to the court), the plaintiff has been harmed, or injured, in past, present, and now future job aspirations and/or prospects.

## IV. CAUSES OF ACTION

13. The defendant (NSA) has caused intentional infliction of emotional distress and slander (as well as violated the plaintiff's Civil Rights) against the plaintiff in retaliation for the reporting of a harassment incident in her first programming office in 1985. Even when the agency learned that the plaintiff was seeking employment elsewhere in a different type of programming (see stamped resume and SF-171 previously submitted), retaliation continued. This is, and has been, seen in its violations of the Privacy Act against the plaintiff (see civil action no. 92-0912, Greene, HR) and later, a Transcript of Proceedings. Prior to the reporting of the harassment incident, the plaintiff received exemplary evaluations and a promotion, although in different occupations. Only after the reporting of the harassment incident did NSA supervisors begin to amass a negative portfolio or profile on the plaintiff in any type of programming, whether in business applications or sytems programming. It produced negative information about the plaintiff's work performance, although the plaintiff was not applying for any systems programming jobs. It prepared negative reports about the plaintiff's medical condition, and even attempted to get the plaintiff to take a psychological examination. Although Judge

3

Greene's earlier ruling required the removal of four (4) documents and expungement of any other negative documents, papers continue to appear that would harm the plaintiff employment-wise (one paper was previously submitted to the current court typed by Denise Bishop, and another undated and unsigned document attempted to "get something on Ms. Tildon"). NSA's refusal to release any other "withheld" documents to a designated representative for the plaintiff confirms that it is still withholding documents (which it has already attested to in the "Verified Complaint") about the plaintiff. These "withheld" documents have already damaged the plaintiff's career.

## V.   RELIEF SOUGHT

14. Since the plaintiff has been blocked from securing papers from her own personnel folder, she is requesting the following relief from the Court:

(a) An order requiring defendant to provide copies of all documents withheld from the plaintiff to the judge for her ruling;

(b) An order requiring defendant to pay compensatory damages to the plaintiff commensurate with the number of years plaintiff was harmed or injured from obtaining work elsewhere from 1986 to 2006 in a "distinctly different area of programming" for which the plaintiff was applying, which was associated with her educational background and training. The plaintiff had never used it at NSA or any other federal agency;

(c) An order requiring those individuals involved in the planning/carrying out of the harassment incident to take responsibility for their actions (be fired,

demoted, charged with perjury, arrested, fined, and/or imprisoned) as set forth by the court;

(d) An order requiring defendant to expunge any negative and hidden documents that have blocked plaintiff from receiving gainful employment elsewhere in business applications; and,

(e) Such other and further relief as to the Court seems just and appropriate in the circumstances.

## VI.   CONCLUSION

The plaintiff, for the foregoing reasons, requests that this case not be dismissed or transferred to the federal court in Baltimore, and that NSA supervisors be held accountable for allowing this type of behavior to occur against its current or former employees. The plaintiff's efforts to secure interviews were destroyed by the negative retaliatory remarks from NSA supervisors who had been reported to NSA authorities for a 1985 harassment incident.

                                        Respectfully submitted,

                                        Margaret I. Tildon

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2008, I caused the foregoing to be served, first class mail, postage prepaid, addressed as follows:

Raymond A. Martinez
Special Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Civil Division
Washington, D.C. 20530

*Margaret I. Tildon*
Margaret I. Tildon
5020 Sheriff Road, N.E.
Washington, D.C. 20019-5539

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARGARET I. TILDON,                )
1014 Barnsbury Court               )
Capitol Heights, MD  20743,        )
                                   )
       Plaintiff,                  )
                                   ) Civil Action No. 92 0912
    v.                             )
                                   )
NATIONAL SECURITY AGENCY,          )
Fort Meade, Maryland  20755-6000,  )
                                   )
       Defendant.                  )
_____)

GREENE, J. HH

APR 1 6 1992

VERIFIED COMPLAINT
(Violations of Privacy Act)

I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the case under the Privacy Act, 5 U.S.C. §552a(g)(1), (5).

2. Venue properly lies in this District under the Privacy Act, 5 U.S.C. §552a(g)(5).

II. THE PARTIES

3. Plaintiff Margaret Tildon is an employee of the National Security Agency (NSA or the agency) and a resident of Maryland.

4. Defendant National Security Agency (NSA) is an agency of the federal government within the meaning of 5 U.S.C. §§552a(a)(1) and 552(e).

III. THE RELEVANT FACTS

5. Plaintiff has been employed by NSA since 1982.

6. NSA maintains personnel files on NSA employees including plaintiff.

EXHIBIT 9

7. On or about November 27, 1989, December 7, 1989, December 8, 1989, and February 23, 1990, plaintiff made requests under the Privacy Act (hereafter referred to collectively as Privacy Act requests), that the agency give her copies of all records it maintained on her and copies of her medical evaluation documents.

8. The agency assigned plaintiff's Privacy Act requests serial numbers J9662-89, J9500-90, J9140-90.

9. On or about June 28, 1990, the agency responded in part to plaintiff's Privacy Act requests, sending her some documents which were responsive to her requests.

10. In its June 28, 1990, response, the agency stated, _inter alia_, that the agency had processed plaintiff's requests of December 7, 1989, for her medical records; that redacted copies of these documents were provided therewith; and that the agency was still processing the rest of plaintiff's December 8, 1989, request and would respond to it "as soon as possible."

11. On or about July 20, 1990, plaintiff requested that the agency send her the rest of the documents sought in her earlier Privacy Act requests and that it destroy and expunge the following documents, copies of which were provided with the agency's June 28, 1990, letter:

(1) A counseling statement from plaintiff's supervisor, dated 20 July 1989;

(2) A Supervisory Evaluation on Ms. Tildon dated

7 November 1989;

    (3) A request for medical evaluation for Ms. Tildon of the same date; and

    (4) An undated handwritten note regarding Ms. Tildon, probably prepared by someone on the Agency's medical staff.

    12. Each of the aforementioned four documents contains statements which are false.

    13. For example, the 20 July 1989 counseling statement made false allegations about plaintiff, her performance, her conduct, and her health.

    14. The Supervisory Evaluation repeated some of the same false statements contained in the counseling statement.

    15. The request for medical evaluation was based on and conveys some of the same false statements contained in the counseling statement and perpetrates the erroneous impression that she had mental health problems.

    16. The fourth document identified above stated, falsely, that she was "unwilling to accept additional responsibilities"; that she did not "interact well" with others; that she was "[d]ozing off"; and that she "questions all new assignments."

    17. In addition, all of the four documents can harm, and probably have harmed, plaintiff's employment opportunities in the agency and perhaps beyond it.

    18. Plaintiff filed and processed to conclusion a

grievance over the 20 July 1989 counseling statement.

19. On August 17, 1990, the agency responded in part to plaintiff's July 20, 1990, letter and her Privacy Act request No. J9500, by stating that since she had requested, as part of her grievance, that one of the same documents (apparently the 20 July 1989 counseling statement) be expunged, it would be holding her Privacy Act request in abeyance until the grievance process was completed.

20. The agency said it would continue to process plaintiff's 27 November 1989 and 23 February 1990 Privacy Act requests and that a response would be forwarded "shortly."

21. On or about October 15, 1990, the agency responded to plaintiff's Privacy Act requests of December 8, 1989, and February 16, 1990, in Serial Nos. J9662A-89 and J9140, stating *inter alia*, that certain information was being deleted or withheld because it was classified; that it was withholding other "information compiled in reasonable anticipation of a civil action or proceeding pursuant to subsection (d)(5) of the Privacy Act"; and that documents which originated with other government agencies were forwarded to these agencies for review and response.

22. Subsection (d)(5) of the Privacy Act, 5 U.S.C. §552a(d)(5), permits agencies to withhold "information compiled in reasonable anticipation of a civil action or proceeding."

23. Plaintiff's grievance was denied by the

5

director of the agency on or about December 28, 1990.

      24. In responding to plaintiff's grievance, the agency declined to expunge the 20 July 1989 counseling statement.

      25. On or about April 15, 1991, plaintiff requested reconsideration of the negative grievance decision.

      26. The agency has never responded to that request.

      27. The agency also failed to respond further to plaintiff's outstanding Privacy Act requests, as it had promised in its letter of August 17, 1990.

      28. On or about June 20, 1991, plaintiff renewed her Privacy Act requests, asserting that because the grievance proceeding was essentially terminated, there was no good reason for withholding documents under the Privacy Act, 5 U.S.C. §552a(d)(5) -- the basis for the agency's decision of October 15, 1990, and that she should at least have been given some general description of the documents withheld, so she could determine the merits of the decision to withhold them.

      29. On or about November 14, 1991, the agency responded to plaintiff's letters, <u>inter alia</u>, asserting that the documents asked to be expunged from Ms. Tildon's records "meet the criteria established by the PA [Privacy Act] and [would] not be expunged."

      30. The response did not identify the documents

withheld or explain why the documents plaintiff wanted expunged met the criteria established by the Privacy Act.

31. As to plaintiff's request for the information withheld under subsection (d)(5), the agency merely stated that "that information is still exempt pursuant to (d)(5) of the PA and the fifth exemption of the FOIA [Freedom of Information Act]."

32. On or about January 15, 1992, plaintiff timely appealed the agency's refusal to provide the requested documents and to expunge the above-identified four documents.

33. Under the Privacy Act, 5 U.S.C. §55a(d)(3), the agency had 30 working days in which to respond.

34. The agency did not respond within 30 working days after receipt of the appeal.

35. On or about March 5, 1992, plaintiff wrote the agency to ask for a response to her appeal and threatened to file a suit if it did not.

36. To date, there has been no response to plaintiff's Privacy Act appeal.

37. To date, the agency has not provided plaintiff a list of the documents it is withholding.

38. Such a list is required by Vaughn v. Rosen, 157 U.S. App. D.C. 340, 484 F.2d 820, 826-828 (1973), cert. denied, 415 U.S. 977 (1974). Accord, John Doe Agency v. John Doe Corp., 493 U.S. 146, 149 n. 2 (1989).

IV. <u>STATEMENT OF CLAIMS</u>

Count I: <u>Withholding Documents</u>

39. Plaintiff adopts and incorporates by reference paragraphs 1-38 above.

40. Plaintiff has requested disclosure of documents which are within a "system of records," as that term is defined by the Privacy Act, 5 U.S.C. §552a(a)(5).

41. As explained above, it is undisputed that the agency is withholding certain documents and is refusing to provide them in response to plaintiff's Privacy Act requests.

42. It is also undisputed that the agency has neither identified the documents it has withheld nor provided plaintiff with a <u>Vaughn</u> index.

43. In any event, the agency has no good cause under the Privacy Act to withhold the documents it is refusing to release.

44. By its acts and in actions which are described above, defendant has violated and is violating the Privacy Act, 5 U.S.C. §552a(d)(1).

45. Plaintiff has been injured by said violations.

Count II: <u>Refusing to Expunge Documents</u>

46. Plaintiff adopts and incorporates by reference paragraphs 1-45 above.

47. Defendant has refused and is refusing to amend its records by expunging the four documents identified

above (paragraph 11).

48. Those documents contain erroneous and false information about plaintiff.

49. Defendant has no good cause to deny plaintiff's requests to expunge the records identified paragraph 11.

50. By failing or refusing to expunge the documents in paragraph 11, defendant has violated and is violating the Privacy Act, 5 U.S.C. §552a(d)(2).

51. Plaintiff has been injured by said violations.

## V. RELIEF SOUGHT

52. Plaintiff requests the following relief from the Court:

(a) An order requiring defendant to provide plaintiff with copies of all the documents withheld from her;

(b) An order requiring defendant to expunge the records identified in paragraph 11 hereof;

(c) An order requiring defendant to reimburse plaintiff for reasonable attorney fees and costs incurred in pursuing this matter, under 5 U.S.C. §552a(g)(3)(B); and

(d) Such other and further relief as to the Court seems just and appropriate in the circumstances.

9

>                                    Respectfully submitted,
>
>                                    _____
>                                    ALAN BANOV #95059
>                                    1920 N Street, N.W.
>                                    Suite 430
>                                    Washington, D.C.  20036
>                                    (202) 822-9699
>                                    Attorney for Plaintiff

**VERIFICATION**

I certify under penalty of perjury that I am the plaintiff in this case; that we have read the foregoing Complaint; and that the factual statements made in it are true and correct to the best of my knowledge, information, and belief.

Executed at Washington, D.C., this 13th day of April, 1992.

>                                    _____
>                                    MARGARET I. TILDON